**Walter B. GRAVES, Appellee,**

v.

**ASSOCIATED TRANSPORT, INC.,
Appellant.**

**No. 9727.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 2, 1965.

Decided April 7, 1965.

Evans B. Jessee, Roanoke, Va. (Arthur E. Smith, Roanoke, Va., on brief), for appellant.

James M. Roe, Jr., Fincastle, Va. (Carter & Roe, and Stuart B. Carter, Fincastle, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, J. SPENCER BELL, Circuit Judge, and CHRISTIE, District Judge.

J. SPENCER BELL, Circuit Judge.

This action, originally filed in the Circuit Court of Botetourt County, Virginia, and removed to the District Court for the Western District of Virginia on the ground of the diversity of the citizenship of the parties, presents a single question: Did the district court err in refusing to treat as res judicata the judgment in a former action (to which only one of the parties in the instant case was a party) arising from the same highway collision?

On November 19, 1962, a collision occurred near Fincastle, Virginia, between a passenger automobile owned and operated by the plaintiff, Walter B. Graves, and a tractor-trailer transport owned by the defendant, Associated Transport, Inc. [hereinafter Associated], and operated by its employee, Thomas S. Flowers. In the present action Graves seeks damages from Associated for personal injuries suffered in the collision, which he alleges was caused by negligence on the part of the defendant's driver, Flowers. On July 14, 1964, the jury returned a verdict for Graves in the amount of $4,000.00 after the district judge in several distinct rulings had refused Associated's plea of res judicata.

There can be no doubt that the defendant effectively presented its defense of res judicata to the court below and preserved that issue for the purpose of this appeal. It affirmatively pleaded the for-

mer judgment; it orally moved for summary judgment at the close of the plaintiff's evidence; it moved for summary judgment at the close of all the evidence; and it moved to set aside the verdict and for summary judgment after verdict. The plea, the motions for summary judgment, and the motion to set aside the verdict were all based upon the theory that the former judgment was conclusive of the issues in this case.

The former judgment in question was rendered by the Law and Chancery Court of the City of Roanoke, Virginia, on July 10, 1964, in an action brought by Flowers, the driver of the tractor-trailer combination owned by Associated, the present defendant, against Graves, the owner-operator of the passenger car and the plaintiff in the case at bar. Flowers alleged in the state court action that personal injuries suffered by him in the collision were the proximate result of the negligence of Graves; Graves denied any negligence and contended that the sole proximate cause of the collision was the negligence of Flowers. The issues of negligence and contributory negligence as causal factors in the collision were thus clearly joined and litigated. The jury in the case of Flowers v. Graves [1] returned a verdict in favor of Flowers, awarding him damages in the amount of $2,000.00. We must take it, then, that the jury found Graves guilty of negligence and Flowers free from contributory fault. If this were a case in which Graves were seeking to relitigate the issues decided in the state court personal injury suit against his adversary in that action, Flowers, we would hold without discussion that, the issues, the causes of action, and the parties being the same in both suits, the former judgment operated as res judicata to bar the second action. Here, however, the plea is asserted not by Flowers, Graves' adversary in the former action, but by the employer of Flowers, Asso-

ciated, who was not a party to the prior action.

■ It is clear beyond question that we must decide this case in accordance with the substantive law of Virginia. The case is in the federal courts solely by reason of the diversity of the citizenship of the parties, and their rights and obligations are concededly governed by Virginia law. Hence the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), applies.

The parties seem agreed that no Virginia authority squarely in point is to be found. In that situation it is our duty, as we see it, to decide the case as we believe it would be decided by the highest court of Virginia, taking into account not merely the generalizations and the dicta in cases from years past but also trends in modern legal thought which we think would be accepted by the Supreme Court of Appeals of Virginia today.

Had this case been presented to a Virginia court a generation or more ago, we have little doubt that the plea of res judicata would have been summarily denied. At that time the ruling notion, viable despite the cogent criticism of Jeremy Bentham [2] and others since the early part of the nineteenth century, was that before it could be invoked, the estoppel of a judgment must be mutual, i. e., no one could plead as conclusive a judgment in a former action unless, had the judgment gone the other way, it would have been binding on him. It seems clear that had the judgment in Flowers v. Graves gone against Flowers instead of for him, elementary principles of due process would prevent its being held binding upon Associated because it was not a party to that action and had no right to control its conduct. Makariw v. Rinard, 336 F.2d 333, 336 (3 Cir. 1964); Rice v. Ringsby Truck Lines, 302 F.2d 550, 552 (7 Cir. 1962); Restatement,

1. A writ of error and supersedeas in this case was refused by the Supreme Court of Appeals on January 18, 1965.

2. See Bentham, Rationale of Judicial Evidence, in 7 Works of Jeremy Bentham

171 (Bowring ed. 1843), a relevant extract from which is quoted in Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281, 284 n.6 (1957).

Judgments § 96, comment (j) (1942). The thrust of the mutuality rule was that since one not a party to the former action could not be bound by the judgment therein, it necessarily followed that neither could he take advantage of it. The Virginia courts, like many others, subscribed to this view. See, e. g., Ferebee v. Hungate, 192 Va. 32, 63 S.E.2d 761, 764 (1951); Pittston Co. v. O'Hara, 191 Va. 886, 63 S.E.2d 34, 42, appeal dismissed sub nom. Winn v. Pittston Co., 342 U.S. 803, 72 S.Ct. 38, 96 L.Ed. 608 (1951).[3]

The mutuality rule was probably never a solid wall; exceptions were created under the pressure of the public interest in an end to litigation. The thought was that under certain circumstances once the party against whom the former judgment was asserted had been afforded a full and fair day in court and a reasonable opportunity to be heard on all the relevant issues, even though against a different adversary, a plea of estoppel by judgment ought to be recognized.[4] Thus where a judgment has been rendered in favor of an indemnitor, it may be pleaded against the adversary party in the former action by the indemnitee, even though the indemnitee was not a party to the prior action. Pickeral v. Federal Land

---

3. Nonetheless, the position represented by these decisions was not free from criticism and challenge. Witness the following statements from a Note, The Mutuality Requirement of Res Judicata in Virginia, 41 Va.L.Rev. 404, 418 (1955):

> "It is obvious that one should not and cannot be bound by a judgment to which he is a complete stranger. But why is the converse of this necessarily true? Is there any substantial injustice in allowing one to assert a claim or defend himself on the basis of what a 'stranger' has previously established? Likewise, is there any real unfairness in limiting a party to one day in court on an issue? It should be remembered that the fundamental policy of the general doctrine of res judicata is to put an end to litigation. Thus, it seems that the Court should seize upon this opportunity to discourage the relitigation of cases."

See also Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 861–865 (1952).

Virginia decisions involving a plea of res judicata subsequent to the Ferebee and O'Hara opinions have turned upon their individual factual circumstances, with little or no discussion of the mutuality rule. Compare Petrus v. Robbins, 196 Va. 322, 83 S.E.2d 408 (1954) (plea allowed, citing the Eagle decision as authority) and Patterson v. Saunders, 194 Va. 607, 74 S.E.2d 204, cert. denied, 345 U.S. 998, 73 S.Ct. 1132, 97 L.Ed. 1405 (1953) (plea by some persons not parties to prior action allowed on identity of interest rationale; emphasis upon fact that party against whom plea asserted had already been heard on same subject matter) with Eller v. Blackwelder, 204 Va. 292, 130 S.E.2d 426 (1963) (plea refused; party against whom plea asserted had not had an opportunity to litigate her claim, since there was no evidence that she knew of or ratified actions by her insurance carrier) and Cooper v. Pickett, 202 Va. 65, 116 S.E.2d 52 (1960) (plea not allowed, and error assigned for this action abandoned on appeal; party against whom plea asserted had not had his day in court on negligence issue). Likewise in Heaton v. Southern Ry. Co., 119 F. Supp. 658, 661 (W.D.S.C. 1954), the court observed that "[t]he plaintiff has had no previous opportunity to prove his case" and rejected a plea of res judicata. In Carter v. Hinkle, 189 Va. 1, 52 S.E.2d 135 (1949), a case relied upon heavily by the appellee, the court did refer on several occasions to the doctrine of res judicata, but the principal inquiry was whether an automobile collision resulting in both personal injury and property damage to one of those involved gave rise to one cause of action or two. The assertion that the satisfaction of the property damage claim merged the injured party's cause of action for negligently inflicted personal injuries into the property damage judgment was rejected by a holding that the injured party had two causes of action in these circumstances.

4. Exceptions to the mutuality rule have been justified with language like this:

> "The rule of mutuality is itself based upon policy and practical necessity and justice, as is the whole doctrine of res judicata, and on the same grounds of policy and justice there would seem to be no objection to departing from it where the party affected has been given one adequate opportunity to be heard either personally or by representation."
> 1 Freeman, Judgments § 429 (5th ed. 1925).

Bank, 177 Va. 743, 15 S.E.2d 82 (1941); City of Richmond v. Davis, 135 Va. 319, 116 S.E. 492 (1923); Restatement, Judgments § 96 (1942). So here, Virginia might well hold that Associated would be entitled to plead the former judgment in favor. of its employee because, if required to respond in damages in the present case for the fault of its employee, it would have, at least in theory, a cause of action for indemnity against the employee; and it would be anomalous if that cause of action should be allowed to prevail against an employee who had already recovered a judgment himself against the third party. In addition, an exception to the rule of mutuality has been recognized where the liability of the person invoking the former judgment is only derivative, i. e., based solely upon the fault of another who has been exonerated. Ward v. Charlton,[5] 177 Va. 101, 12 S.E.2d 791 (1941); Restatement, Judgments § 99 (1942); cf. Kinsley v. Markovic, 333 F.2d 684 (4 Cir. 1964). Here Virginia might well allow this plea by Associated on the ground that any liability on its part must be predicated solely upon the fault of its driver, Flowers, who was exonerated of fault by the state court decision.[6] In reaching our decision in this case, however, we do not rest upon these exceptions because there is some question as to their applicability as the strategic positions of the parties in the respective actions vary and because we believe the Virginia courts would base their allowance of the plea on a broader ground.

As one judicial writer has asserted, perhaps the "widest breach in the citadel of mutuality was rammed"[7] by the decision of the Supreme Court of California in Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942). In this historic decision Justice, now Chief Justice, Traynor, writing for a unanimous court, stated:

"The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party un-

---

5. This case appears to us to be the Virginia decision which involves a factual situation most similar to that of the case at bar. In the Ward case, however, the defendant in the first suit filed a cross-claim seeking recovery for his personal injuries and property damage. In our case the issue of the fault of the plaintiff in the first action was also raised, but it was done by a plea of contributory negligence rather than by a counterclaim. Also in Ward the jury in the first action returned a verdict that neither party was entitled to recover of the other, whereas in our case the jury in the state court action determined by its verdict that the conduct of Graves was solely responsible for the injuries suffered by Flowers. In sustaining the action of the trial judge in Ward in setting aside a jury verdict for the plaintiff in the second action and entering judgment for the defendant (who was not a party to the first action), Justice, now Chief Justice, Eggleston declared:
"Here it has been brought to our attention by undisputed evidence that since the trial below another court of competent jurisdiction has finally adjudicated that the plaintiff in error, Ward, is not entitled to a judgment against Charlton, the defendant in error. Hence, the plaintiff in error is estopped to ask this court to review the record before it and to enter in his favor a judgment which admittedly will be in conflict with one which has already been entered on the same cause of action." 12 S.E.2d at 796.

6. Allowance of the plea of the former judgment on this basis would likely find the court characterizing Associated as being in privity with Flowers, since under the doctrine of res judicata, a final judgment by a court of competent jurisdiction is conclusive upon both the parties involved and those in privity with them. Restatement, Judgments § 83 (1942). For a case involving Virginia law in which the doctrine of res judicata was held applicable because of the operation of the privity concept, see Taylor v. Anderson, 303 F.2d 546 (4 Cir. 1962).

7. Judge Friendly, writing for the Second Circuit, in Zdanok v. Glidden Co., 327 F.2d 944, 954 (1964).

less he was bound by the earlier litigation in which the matter was decided. * * * He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. * * * There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

"No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. * * *

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? * * *

"In the present case, therefore, the defendant is not precluded by lack of privity or of mutuality of estoppel from asserting the plea of res judicata against the plaintiff." 122 P.2d at 894–895.

For the California courts, at least, this decision abolished the requirement of mutuality of estoppel and limited the requirement of privity to cases in which an attempt is made to plead the former judgment *against* one not a party to the action in which it was rendered. Other states and several United States courts of appeals have followed suit.

Among the cases relied upon in Bernhard was Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490 (1927). In that case, the opinion of the Virginia Supreme Court of Appeals opens with the following statement:

"This is a case in which a rigid adherence to a general rule and to some judicial expressions would be a reproach to the administration of justice. Max Heller has recovered under a fire insurance policy upon a stock of goods, after he had been convicted under the Virginia statute (Code, § 4436) of willfully burning the same stock of goods with intent to injure the insurer." 140 S.E. at 315.

President Prentis, writing for a unanimous court, went on to rule that the trial court had erred in excluding evidence of the prior judgment of conviction (although the defendant insurance company in the civil action, which was asserting the former judgment in defense, was obviously not a party to the criminal proceeding resulting in that judgment). In so ruling, the Virginia court, responding to considerations of public policy, rejected the mutuality rule and departed from a long line of cases holding such criminal convictions inadmissible in civil cases at the instance of persons not parties to the criminal proceeding. In the course of his opinion, President Prentis stated:

"It is certainly clear in such cases that the plaintiff who is seeking redress in the civil case for the injury, not having been a party to the criminal prosecution, is not bound by its result [when the criminal judgment is one of not guilty]. We confess our inability to perceive, however, why the accused person himself should not be held either as bound or affected by the result of the prosecution, if adverse to him. He has had his day in court, with the opportunity to produce his witnesses, to examine and cross-examine the witnesses for the prosecution, and to appeal from the judgment." 140 S.E. at 316.

The criminal judgment was held conclusive:

"Therefore he [the convicted plaintiff] should not be permitted again to raise that question by this collateral attack upon that judgment,

and thus to avoid its legal and logical consequences." 140 S.E. at 321.

The lower court judgment in favor of the plaintiff was reversed, and judgment was entered in favor of the defendant insurance company.[8]

While the reasoning of the Eagle case was based in part upon the fact that in a criminal case guilt must be proved beyond a reasonable doubt, thus giving added credit to the criminal judgment as decisive of the issue in the civil case, the Virginia court in its opinion did not limit the rationale to that circumstance. Indeed, it cited with approval a number of cases in which former judgments in civil actions had been held res judicata at the instance of one not a party to the former action. It was thus appropriate that Justice Traynor should rely upon the Eagle case as one of the foundations for the Bernhard decision.[9]

One commentator, welcoming the Bernhard decision, suggested that it be accepted subject to two reservations, only one of which is relevant here. Because the first action might be one in which the party having the initiative might use his advantage unfairly, subjecting his adversary to trial under conditions which, while meeting the minimum requirements of due process, in fact deprived the adversary of a full and fair opportunity to litigate the issues involved, he suggested that ideally the court in each case should inquire whether the former judgment was in fact rendered under such conditions that the party against whom it is pleaded realistically had a full and fair opportunity to present his case. However, doubting the willingness and ability of courts to make such an inquiry into the circumstances on a case-by-case basis,

he suggested as an alternative that a plea of the former judgment by one not a party to the prior action should be allowed only if the party against whom the judgment was invoked had the initiative in the prior action. Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281, 303 (1957). The courts have not justified this pessimistic view of their duty and function; instead they have willingly inquired into the circumstances of the actual case, and time and again they have allowed the plea against a party not having the initiative in the former action whenever they have been satisfied that the party against whom the former judgment was invoked in fact had a realistically full and fair opportunity to litigate the issues in the former action. See, e. g., Zdanok v. Glidden Co., 327 F. 2d 944, 955–956 (2 Cir. 1964); United States v. United Air Lines, 216 F.Supp. 709, 728–729 (E.D.Wash., D.Nev.1962), 1964 Duke L.J. 402, aff'd as to this point, 335 F.2d 379, 404 (2 Cir.), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal.2d 601, 25 Cal. Rptr. 559, 561, 375 P.2d 439, 441 (1962). The commentator has now withdrawn his reservation and welcomes the decisions treating the fairness of the party's opportunity to litigate the issues in the former action on an ad hoc basis. See Currie, The Contributions of Roger J. Traynor—Civil Procedure: The Tempest Brews, 53 Calif.L.Rev. 25 (1965).

No suggestion has been made and no basis appears for any suggestion to the effect that Graves had less than an ample opportunity to fully litigate the issue of fault in the former action, although it was his adversary, Flowers,

8. For a discussion of the Heller case and decisions from other jurisdictions in which it has been followed, see Note, Admissibility and Weight of a Criminal Conviction in a Subsequent Civil Action, 39 Va.L.Rev. 995 (1953). See also, on this general point, Farm Bureau Mut. Auto Ins. Co. v. Hammer, 177 F.2d 793 (4 Cir. 1949), cert. denied sub nom. Beverage v. Farm Bureau Mut. Auto. Ins. Co., 339

U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950).

9. Even prior to the Eagle decision, several Virginia courts had viewed rigid adherence to the mutuality doctrine with disfavor. See Cox, Res Adjudicata: Who Entitled to Plead, Va.L.Reg.(n.s.) 241 (1923), and Virginia cases cited therein. But see Note, supra note 8, at 1001 n.36.

who had the initiative. Similarly, in the Eagle case, the defendant in the criminal case did not have the initiative; but, faced with a felony charge, he had a strong motive to put forward his best defense, and he thus was not allowed another day in court in the civil action. So here, the plaintiff, having had one full and fair day in court, ought not to be permitted to relitigate the issues decided in the personal injury action in the state court.

Graves earnestly insists that it is arbitrary to allow the fate of this action to turn not upon its merits but upon the happenstance of calendar conditions, that our disposition of this appeal will preclude any recovery by him simply because the case in the state court went to judgment while the present lawsuit was pending in the district court. It must be conceded that there is here an element of the arbitrary and fortuitous; but the concept of priority in time is necessarily inherent in the basic idea of res judicata, which, after all, simply means that, the issue having *already* been decided once by a court of competent jurisdiction, it should not be litigated a second time. Perhaps the law might have chosen the alternative of giving conclusive effect to the judgment in the action first filed instead of to the first judgment rendered; but a choice had to be made, and it was made long ago. Reflection should convince the plaintiff that, whatever the faults of the rule giving effect to the judgment first rendered, such a rule is preferable to the only alternative which readily suggests itself, a situation which would almost certainly tend to precipitate a "race of diligence" to the courthouse and encourage the hasty and ill considered filing of actions.

Finally, the plaintiff states that Associated was represented at the trial below by the same counsel who represented the driver, Flowers, in the former action but that he has not had the benefit of this continuity of legal representation. He advises us that in the initial suit he was represented by counsel for his insurance carrier, whereas in this action he

presumably has been represented by counsel entirely of his own choosing. Even taking note of this circumstance, however, we are at a loss to understand in what manner it strengthens the plaintiff's case. To our knowledge, Graves has never claimed, and we do not understand him to claim now, that his counsel in the state court proceeding was anything other than a competent and conscientious advocate of his interests. As we observed earlier, there is no basis for even speculating that the plaintiff had anything other than a full and fair chance to introduce all the relevant evidence and be heard on all points of law before the Law and Chancery Court of the City of Roanoke. All this being so, clearly the mere fact that Graves has changed lawyers ought not to increase his substantive rights and provide him with a chance to dispute anew factual matters already once resolved against him. If the matter of different counsel has any bearing upon the disposition of this appeal, it would seem to operate to the plaintiff's *disadvantage*, since his essential contention is that because Associated was not a party to the prior action, it may not claim the benefit of the judgment which was rendered therein. The natural inference to be drawn from the common counsel situation (which at least suggests a common underwriter), however, is that there is some identity of the interests of Associated and Flowers, the very thing which Graves strenuously maintains does not exist. This is all the more reason why the plea of the former judgment by Associated should be allowed. If Associated or its insurer actually controlled the litigation in Flowers v. Graves, a situation which Graves contends and we have assumed did not exist, it is at least arguable that the judgment in that action, even had it gone against Flowers, would have been binding upon Associated; and then there would be no mutuality problem. Restatement, Judgments § 84 (1942).

As we understand the law of the Commonwealth of Virginia, it is designed to insure that every litigant has an opportunity to be heard on any appropriate

issue in a court of law. However, the decisions of the highest court of Virginia convince us that the state also is anxious to insure that once a party has been afforded a chance to assert his claim, further litigation involving that claim is not to be permitted. The state has a legitimate interest in the *final* adjudication of legal disputes, and it is incumbent upon us in this case to give effect to that state policy. We think that if this case were presented to the Virginia courts, they would hold that Graves has already had his day in court on the question of who is responsible for the personal injuries which resulted from the collision on November 19, 1962. Accordingly, the district judge was in error in rejecting the plea of res judicata tendered below by Associated. The judgment of the district court must, therefore, be reversed and the case remanded for the entry of final judgment in favor of the defendant.

Reversed and remanded.